# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| INFINITY REAL ESTATE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:18-cv-00038-LEW |
| | ) | |
| DEUTSCHE BANK NATIONAL | ) | |
| TRUST COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Maine mortgage foreclosure procedures provide that "[t]he mortgagee shall sell the premises to the highest bidder at the public sale and deliver a deed of that sale … to the purchaser." 14 M.R.S. § 6323. Plaintiff Infinity Real Estate LLC was the second highest bidder at the public sale for certain Kittery, Maine realty. Only the defaulting mortgagor outbid Plaintiff. When the defaulting mortgagor failed to close the sale, Defendant Deutsche Bank National Trust Company offered to sell the property to Plaintiff and Plaintiff accepted. Although Plaintiff and Defendant executed a Purchase and Sale Agreement, Defendant later reneged. Plaintiff contends it is entitled to specific performance of the agreement, and Defendant maintains it cannot sell the property to Plaintiff because a sale to Plaintiff would violate Maine law.

The matter is before me on cross-motions for summary judgment. Defendant also requests that I strike a summary judgment affidavit filed by Plaintiff in support of Plaintiff's summary judgment reply memorandum.

## SUMMARY JUDGMENT FACTS

The parties submitted their motions on a stipulated record, which recites the following facts. On April 19, 2012, Deutsche Bank obtained a judgment of foreclosure and sale against Fancesco Rotondo and realty located at 1 Tudor Drive, Kittery, Maine, 03904.

On January 17, 2017, Deutsche Bank held a foreclosure auction to sell the property. In addition to Deutsche Bank, six other registered bidders attended the foreclosure auction. Among the registered bidders were Francesco Rotondo, the previous mortgagor and owner of the property, and Aaron Additon, the owner and sole member of Infinity Real Estate LLC.

At the foreclosure auction, Deutsche Bank provided bidders with the Terms and Conditions for the Public Sale. Ex. A-3 (ECF No. 27-3). The Terms and Conditions, which purported to contain "all of the terms set forth in the Purchase and Sale Agreement form included in the bidder's prospectus and provided to registered bidders at the time of registration to bid," Ex. A-3 § D, included the following provision governing Defendant's right to close the sale with someone other than the highest bidder:

> (F) … In the event that there is a failure to close the sale with any person who executes a Purchase and Sale Agreement, The Lender reserves the right to either hold a new sale or to contact the next highest bidder and allow that party to purchase the property as assignee of the interests of the highest bidder.

At the end of the foreclosure auction, Francesco Rotondo was the highest bidder and Aaron Additon of Infinity Real Estate, LLC, the second highest bidder.[1]  On January 17, 2017, Francesco Rotondo executed a Purchase and Sale Agreement with Deutsche Bank for a purchase price of $755,000.  However, Mr. Rotondo failed to close the sale of the Property.

Following Mr. Rotondo's failure to close, counsel for Deutsche Bank offered to sell the Property to Infinity Real Estate LLC for $590,024.19.  Infinity Real Estate accepted this offer and on July 24, 2017, Mr. Additon signed a Purchase and Sale Agreement prepared by Deutsch Bank for the sale of the property.  Ex. A-4 (ECF No. 27-4).  Infinity Real Estate then paid the $5000 deposit.

Infinity Real Estate was ready, willing, and able to close on the sale of the property.  However, Deutsche Bank unilaterally refused to close the sale.  Deutsche Bank does not contest that its refusal to honor the Purchase and Sale Agreement with Infinity Real Estate constituted a breach of that contract.  Def.'s Opp. to Mot. Summ. J. 4, n.2.

---

[1] The bidding at the auction proceeded as follows:

1. $589,023.19 - Deutsche Bank
2. $589,024.19 - Francesco Rotondo
3. $590,024.19 - Aaron Additon
4. $600,000.00 - Francesco Rotondo
5. $605,000.00 - Aaron Additon
6. $610,000.00 - Francesco Rotondo
7. $615,000.00 - Aaron Additon
8. $620,000.00 - Francesco Rotondo
9. $625,000.00 - Aaron Additon
10. $650,000.00 - Francesco Rotondo
11. $655,000.00 - Aaron Additon
12. $660,000.00 - Francesco Rotondo
13. $665,000.00 - Aaron Additon
14. $675,000.00 - Francesco Rotondo
15. $685,000.00 - Aaron Additon
16. $700,000.00 - Francesco Rotondo
17. $705,000.00 - Aaron Additon
18. $710,000.00 - Francesco Rotondo
19. $720,000.00 - Aaron Additon
20. $725,000.00 - Francesco Rotondo
21. $750,000.00 - Aaron Additon
22. $755,000.00 - Francesco Rotondo

Ex. A-2 (ECF No. 27-2). After Defendant's opening bid, only Mr. Additon, on behalf of Plaintiff, and Mr. Rotondo cast bids.

# DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As cautioned by the Supreme Court, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 247-48 (1986). A material fact is one that has the potential to determine the outcome of the litigation. *Id.* at 248; *Oahn Nguyen Chung v. StudentCity.com*, *Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). To raise a genuine issue of material fact, the party opposing the summary judgment motion must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material issues in their favor. *See Triangle Trading Co. v. Robroy Indus*., *Inc*., 200 F.3d 1, 2 (1st Cir. 1999) ("Unless the party opposing a motion for summary judgment can identify a genuine issue as to a material fact, the motion may end the case."). [2]

In its motion for summary judgment, Defendant asserts that the "sole issue . . . is whether 14 M.R.S.A. § 6323 bars Deutsche Bank's sale of the Property to Plaintiff, insofar as the Maine foreclosure statute requires that property sold at a foreclosure auction must be conveyed to the 'highest bidder,' which was indisputably not the Plaintiff here." Def.'s Mot. 1-2. Plaintiff, on the other hand, moves for summary judgment based on the Terms

---

[2] The existence of cross-motions for summary judgment does not change the analytical framework. *Cochran v. Quest Software*, *Inc.*, 328 F.3d 1, 6 (1st Cir. 2003). When considering cross-motions for summary judgment, I simply "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Wightman v. Springfield Terminal Ry. Co*., 100 F.3d 228, 230 (1st Cir. 1996).

and Conditions of the Public Sale, which allowed for Deutsche Bank to contact the next highest bidder upon the highest bidder's failure to close, to refuse any irregular bids, and to determine the highest bidder. Pl.'s Mot. 5.

## I. CONSTRUING THE STATUTE

The foreclosure statute provides that the seller "shall sell the premises to the highest bidder." 14 M.R.S. § 6323(1).[3] When interpreting the meaning of a statute, Maine courts endeavor to give effect to legislative intent as expressed, ideally, in the plain language of the statute. *Wawenock, LLC v. Dep't of Transp.*, 187 A.3d 609, 612 (Me. 2018). If the plain language leaves room for interpretation, then courts will seek to avoid readings that are absurd, inconsistent, unreasonable, or illogical. *Id.* They may also look to legislative history and other indicia of legislative intent, if available and instructive. *Id.*

The parties have not provided me with any binding authority that addresses Defendant's contention that it cannot sell to Plaintiff as a matter of law. Nor have I found any authority directly on point. When state law does not supply a ready answer to the question presented, a federal court must "endeavor to predict how [the state's highest] court would likely decide the question." *Butler v. Balolia*, 736 F.3d 609, 612-13 (1st Cir. 2013). This involves consideration of "the types of sources that the state's highest court would be apt to consult, including analogous opinions of that court, decisions of lower courts in the

---

[3] Chapter 713 of Title 14 supplies "Miscellaneous Provisions Relating to Foreclosure of Real Property Mortgages." Subchapter 6, of which § 6323 is a part, concerns "Foreclosure Proceedings by Civil Action." The provision at issue in this case is captioned "Sale following expiration of period of redemption." 14 M.R.S. § 6323.

5

state, precedents and trends in other jurisdictions, learned treatises, and considerations of sound public policy." *Id.* at 613.

By providing that the seller of foreclosed realty "shall sell … to the highest bidder," 14 M.R.S. § 6323, Maine foreclosure law in part states what would be obvious to any auctioneer or bidder. Specifically, the highest bidder wins the auction and is expected to be prepared to close the sale. The important clause, however, is "the mortgagee shall sell the premises," because this requirement is not obvious from the history of real estate auctions. Under the common law, sellers or auctioneers acting for seller were free to withdraw realty from sale if dissatisfied with the final bid price. *See*, *e.g.*, *Peters v. Day*, 210 N.Y.S. 42, 44 (Sup. Ct. 1925) (discussing the auctioneer's ability to withdraw and refuse to sell realty to the highest bidder, without liability, because prior to execution of the written contract of sale the statute of frauds would prevent the successful bidder's enforcement of the sale); *see also Horton v. McCarty*, 53 Me. 394, 398 (1866) (in which the purchaser relied on the statute of frauds to avoid seller's claim); *Grafton v. Cummings*, 99 U.S. 100, 112 (1878) (same, applying law of New Hampshire); *Veazie v. Williams*, 49 U.S. 134, 152 (1850) (discussing the auctioneer's varied agency capacities; noting that the auctioneer is in agency to the buyer after the sale for limited purposes, including "to take the case out of the statute of frauds" – applying Maine law but citing English case reports and a contemporaneous treatise on sales)[4]; *Union Car Advertising Co. v. Boston Elevated*

---

[4] For the history buff, *Veazie v. Williams* involved suit by General Samuel Veazie (veteran of the War of 1812) related to the sale by auction of mill privileges on Old Town Falls, in the town of Orono, with the auction conducted at the Penobscot Exchange, in Bangor. Counsel: Messrs. Fessenden and Webster.

*Ry. Co.*, 26 F.2d 755, 757 (1st Cir. 1928) (criticizing *Boyd v. Green*, 39 N.E. 277 (Mass. 1895), for not adhering to the statute of frauds). Given this backdrop, it appears most likely that the Maine Legislature instructed that the mortgagee "shall sell the premises" to prevent the mortgagee from withdrawing the property after the auctioneer has struck it down to the winning bidder.

What the statute decidedly does not state – or imply – is that the label "highest bidder" cannot be reallocated after the withdrawal or default of the person identified as the highest bidder at the fall of the auctioneer's hammer. Such a construction would be impractical and would unnecessarily prolong many foreclosure proceedings despite the availability of a perfectly satisfactory fallback bid. Although impracticability may not be enough, standing alone, to rule out Defendant's proposed construction, Defendant's construction would also be inconsistent with common law sources the Law Court likely would consider when determining the most apt construction.

In *Forbes v. Wells Beach Casino*, 307 A.2d 210 (Me. 1973), the Maine Supreme Judicial Court (the "Law Court") recognized as a reasonable common law rule the principle that "when a higher bid is proved not to be a good-faith bid," the next highest bidder may be entitled to take the property if he or she is able to close the sale. *Id.* at 219-20. It should be noted that the *Forbes* Court did not address a foreclosure auction and instead considered a scenario in which sellers submitted their own sealed bids without disclosing a reserve.

Nevertheless, the Law Court recognized that someone other than the highest bidder may be deemed the highest bidder by operation of legal principles.[5]

Further guidance is offered by Courts of the Commonwealth of Massachusetts. As they explain, the common law recognizes the rule that a seller may accept the next highest bid when the highest bidder withdraws without executing or otherwise fails to close a Purchase and Sale Agreement. *See, e.g., 146 Dundas Corp. v. Chemical Bank*, 511 N.E.2d 520, 524 (Mass. 1987) ("States which have considered the problem generally conclude that, in mortgage foreclosure sales, if the highest bidder fails to pay, the trustee of the property may declare that the next highest bidder may purchase the property, may resell the property promptly, or may readvertise the sale for another day"); *Costello v. Merrill Lynch Credit Corp.*, 983 N.E.2d 749 (Mass. App. Ct. 2013) (rejecting mortgagor's challenge to validity of sale to second highest bidder where mortgagor's husband, the highest bidder, failed to close the sale); *Costello v. Sovereign Bank, FSB*, No. 10 MISC 442626, 2012 WL 760213, at *5 (Mass. Land Ct. Mar. 8, 2012), *aff'd sub nom. Costello v. Merrill Lynch Credit Corp.*, 983 N.E.2d 749 (Mass. App. Ct. 2013) (same, where highest bidder signed sale agreement notifying him of mortgagee's right to sell to second highest bidder). I see no reason why this rule would not apply equally under the common law of Maine. Although the statue provides that the seller shall sell to the highest bidder, it does

---

[5] Particularly where, as here, the highest bidder was the defaulting mortgagor, it stands to reason that the mortgagee should be able to disregard the highest bid upon appropriate terms, such as, for example, the lack of a firm commitment from another lender or other indicia that the defaulting mortgagor has the capacity to perform, and certainly following failure to close.

not define "highest bidder" and it does not provide that upon default of the highest bidder the seller may not (at its election) deem another party highest bidder.

Considering these authorities, which I believe the Law Court would find persuasive, I conclude that Defendant's proposed construction of the statute is ill-advised and inappropriate. Here, Plaintiff and Defendant participated in an auction where the rules specified that Defendant could accept the bid of someone other than the highest bidder if the highest bidder failed to close the sale. Defendant not only reserved this right, but exercised it by offering to sell the property to Plaintiff. Defendant and Plaintiff then executed a Purchase and Sale Agreement, which now formalizes and governs their legal relationship. Nothing in the foreclosure statute prohibits this series of events.

## II. CONTRACT ENFORCEMENT

What remains of the parties' dispute is a matter of contract law. Paragraph 12 of the Purchase and Sale Agreement provides that the governing law is the law of Maine. "A contract exists when the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite." *McClare v. Rocha*, 86 A.3d 22, 28 (Me. 2014). "Whether a contract exists, the intent of the parties in entering into a contract, and whether a breach occurred are questions of fact." *Id.*

Based on the stipulated facts, Plaintiff and Defendant mutually agreed to contract for the purchase and sale of the subject real estate. No reasonable fact finder could conclude otherwise. Additionally, Plaintiff has demonstrated on undisputed facts

Defendant's breach. Accordingly, the remaining question is whether the appropriate remedy can be determined on the summary judgment record.

### A. Specific Performance

Plaintiff has requested the equitable remedy of specific enforcement and Defendant has not raised any valid obstacle to that remedy. Given Defendant's failure to raise any legitimate legal or factual obstacle to the validity of the parties' agreement, specific performance is an appropriate remedy. *Drinkwater v. Patten Realty Corp.*, 563 A.2d 772, 775-76 (Me. 1989); *see also McClare*, 86 A.3d 22; *Brown Dev. Corp. v. Hemond*, 956 A.2d 104 (Me. 2008). Indeed, given the contract's limitation on damages, discussed below, specific performance is the appropriate remedy. *Sullivan v. Porter*, 861 A.2d 625, 633 (Me. 2004) ("It is within the trial court's equitable powers to apply the remedy of specific performance when a legal remedy is either inadequate or impractical.").

Defendant has not raised an affirmative defense to the specific performance remedy other than the supposed illegality of a sale to someone other than the "highest bidder." Because that defense fails both as a matter of law and fact, Plaintiff's right to specific performance of the purchase and sale agreement is established on an undisputed record. Plaintiff has requested specific performance from the Court and I award the remedy in this Order.

### B. Contract Damages

Defendant argues it is entitled to summary judgment against any claim for contract damages more than the deposit amount, $5000, citing paragraph 7 of the Purchase and Sale Agreement. Def.'s Mot. 7-8. Paragraph 7 reads as follows:

10

> **Limitation on Buyer Damages.** Buyer agrees that in any dispute or action arising out of this Agreement, or the matters described herein, the damages to which Buyer may be due at any time and as against Seller for any reason shall be specifically limited to the amount of Buyer's deposit, repayable without interest, and that under no circumstances may such damages include any claim for punitive damages, lost profits or investment opportunities, or attorneys' fees.

Plaintiff argues the limitation of damages is unenforceable, citing a case involving liquidated damages, *Pacheco v. Scoblionko*, 532 A.2d 1036, 1038 (Me. 1987). Plaintiff also contends the limitation is potentially unconscionable. Pl.'s Mot. 9; Pl.'s Opp. 8. Defendant similarly cites precedent involving liquidated damages. Def.'s Mot. 8. However, in opposition to Plaintiff's motion, Defendant changes tack, advising that its contract imposes a "limitation of damages," not liquidated damages, and that the two kinds of provisions "are similar and often conflated." Def.'s Opp. 10. Proclaiming its "sophistication" in real estate transactions, Defendant asks that I enter judgment for Plaintiff in the amount of $5000 and leave it at that. *Id.* at 13. Indeed, in the caption for its argument, Defendant states "Plaintiff is Entitled to $5,000 in Damages Pursuant to Paragraph 7 of the Purchase and Sale Agreement." *Id.* at 8 (emphasis added).

"The Maine Supreme Judicial Court has often stated that the inquiry used to determine the enforceability of a liquidated damages clause, referred to here as the *Pacheco* test, requires: (1) the damages caused by the breach are 'very difficult' to estimate accurately; and (2) the amount fixed is a reasonable forecast of the amount necessary to compensate justly one party for the loss occasioned by the other's breach." *Bernath v. Potato Servs. of Mich.*, 300 F. Supp. 2d 175, 183 (D. Me. 2004). "The enforceability of a

liquidated damages provision is a question of law." *Pacheco v. Scoblionko*, 532 A.2d 1036, 1038 (Me. 1987).

Assuming arguendo that the provision can be construed as a kind of liquidated damages provision, I have no trouble concluding that the preclusion of attorney fees and punitive damages is enforceable. Even in the absence of the limitation provision, there would be no basis for either award in this contract action. As for the $5000 damages cap, and the preclusion of damages for lost profits and investment opportunity, I am satisfied that the provision is enforceable.

*Pacheco* concerned an unduly harsh liquidated damages provision imposed as a form of penalty for withdrawing from an agreement. 532 A.2d at 1038. Here, the provision in question limits rather than imposes contract damages. More importantly in my view, however, this dispute emerges from a foreclosure auction at which Plaintiff's opportunity to purchase the property arose at the election of the seller following the highest bidder's failure to close. Had Defendant not offered to sell to Plaintiff, Plaintiff's options were not particularly appealing. Plaintiff either could have attempted to compel a sale as next highest bidder – based on an uncertain legal landscape – or Plaintiff could have waited for another auction Plaintiff might have lost. It is not unreasonable, under these circumstances, for the agreement to provide that Plaintiff's remedy for failure to convey will not include lost opportunity damages. In fact, Maine common law provides that if Plaintiff were to receive the kind of damages it is proposing, Plaintiff could not also obtain the property. *McIntyre v. Plummer Assocs.*, 375 A.2d 1083, 1084 (Me. 1977) ("It is axiomatic that an

equitable remedy such as specific performance will not be granted where there exists an adequate remedy at law.").

The remaining question is whether Plaintiff should receive an award of damages up to $5000 as a supplemental award. On this issue, I will construe the limitation of damages provision, drafted by Defendant, strictly against Defendant. *Williams v. Williams*, 161 A.3d 710, 715 (Me. 2017) ("Any ambiguity in a contract should be construed strictly against the drafter."). The provision in question generates ambiguity because it refers to the "amount of Buyer's deposit, repayable without interest," as a kind of "damages." Ordinarily, one would not consider the return of a deposit to be payment for damages.

Ambiguous contract language raises "a question of fact for the factfinder." *Id.* Because the mere refund of a deposit would not really be a form of "damages," the finder of fact could readily conclude that the provision authorizes an award of up to $5000 as damages.[6]

While it is tempting to enter an award of $5000 on this record based on Defendant's statement that Plaintiff "is entitled" to $5000 in damages, Defendant made the statement based on the assumption there would be no sale and it would simply return to Plaintiff the $5000 deposit. I have not, therefore, treated Defendant's statement as a concession of damages. Instead, I have reviewed the record to determine if there are undisputed facts that establish the appropriate measure of a damage award, up to $5000.

---

[6] I see from the docket sheet that Defendant has demanded a jury trial. This is surprising because paragraph 8 of Defendant's purchase and sale agreement includes a waiver of jury trial.

In support of its summary judgment *reply* memorandum, Plaintiff provided an affidavit from its "sole member," Aaron Additon. Mr. Addition's Affidavit includes, *inter alia*, testimonial evidence to the effect that (1) the financing Plaintiff obtained included a $7000 commitment fee that Plaintiff paid after executing the Purchase and Sale Agreement and before Defendant's breach and (2) Plaintiff also incurred a $950 appraisal fee. Reply Stmt. ¶ 12; Additon Aff. ¶¶ 15-16 (ECF No. 32-1). Defendant has moved to strike the affidavit as unfairly prejudicial given its timing and the fact that the parties agreed to proceed on a stipulated record. Defendant also objects to certain statements concerning property value because they amount to an expert opinion. Def.'s Mot. to Strike (ECF No. 37). Defendant has not raised any other evidentiary objection concerning the $7950 in expenses.

To be clear, I have reviewed the Additon Affidavit for the exclusive purpose of assessing the appropriateness of a damage award, potentially as high as $5000. The problem I see for Plaintiff is that the $7950 in expenses is part of the cost of conducting its business. Because I have ordered Defendant to close the sale by awarding the specific performance remedy, those costs do not really reflect injury. Even without the breach by Defendant, Plaintiff would have incurred these expenses. Accordingly, I will strike the Additon Affidavit because, to the limited extent I might be inclined to consider it, it is immaterial.

## CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 28) is DENIED IN PART (as to liability and specific performance) and GRANTED IN PART (as to enforcement of

the limitation on damages).  Plaintiff's Motion for Summary Judgment (ECF No. 29) is GRANTED IN PART (as to liability and specific performance) and DENIED IN PART (as to the request to void the limitation on damages).  Defendant's Motion to Strike (ECF No. 37) is GRANTED.

Defendant will convey the property to Plaintiff at the agreed upon price, $590,024.19.  The matter of contract damages, up to but not exceeding $5000, is not resolved on the current record.  The Court is hopeful the parties can resolve the matter without further litigation, and hereby ORDERS the parties to file a status report within 30 days of this Order.

**SO ORDERED.**

Dated this 29th day of April, 2019.

                                                        /s/ Lance E. Walker
                                                        U.S. DISTRICT JUDGE